**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| KAY F. SMITH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 3:17-CV-00261-MGG |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | ) ) ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

On April 3, 2017, Plaintiff Kay F. Smith ("Smith") filed a complaint in this Court seeking reversal of the Social Security Commissioner's final decision to deny her application for disability benefits. Smith filed her opening brief on this matter on August 22, 2017. On October 31, 2017, the Commissioner of Social Security ("Commissioner") filed a response asking the Court to affirm the decision denying benefits. This matter became ripe on November 14, 2017, when Smith filed her reply brief. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.    PROCEDURE**

On October 14, 2013, Smith filed both an application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). In both applications, Smith alleged disability beginning January 1, 2012. The Social Security Administration ("SSA") initially denied these claims on January 13, 2014, and upon

reconsideration on March 24, 2014. Thereafter, Smith filed a written request for hearing on April 15, 2015. Smith appeared and testified at a hearing before an administrative law judge ("ALJ") held on December 10, 2015. An impartial vocational expert ("VE"), and Smith's roommate, Theresa Guinn, testified at the hearing. After the hearing, the ALJ issued a written decision on January 6, 2016, denying Smith's application reasoning that she could perform past relevant work and therefore was not disabled.[1]

The Appeals Council denied Smith's request for review on February 2, 2017, making the ALJ's decision the final decision of the Commissioner. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Smith then sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) by filing her complaint in this Court on April 3, 2017.

## II.     RELEVANT BACKGROUND

Smith was born on November 26, 1963, and was 48 years old on the alleged disability onset date. She has a 12th grade education and has engaged in past relevant work as a cashier at a gas station.

### A.     Plaintiff's Testimony

At the ALJ hearing, Smith confirmed her symptoms, past work history, and activities of daily living. She testified that she had a pacemaker implanted in 2012 and that she has seizures and problems with her back. She reported that her seizures

---

[1] On February 10, 2009, Smith filed her first applications for DIB and SSI alleging a disability onset date of January 23, 2009. Smith's first applications were denied by the ALJ on March 15, 2011, and by the Appeals Council on March 14, 2012. Smith raises no issues with the resolution of her 2009 disability benefits application. Therefore, the Court need not discuss it further here.

happen a few times every day during which she blacks out and then cannot remember what happened. Smith explained that she still has seizures even though she has been on medication, and that she cannot work because of her seizures. Smith also testified that she contributes to household chores and socially engages with neighbors and her roommate. Smith further indicated that she could walk unassisted throughout the grocery store and carry her groceries home by herself.

    B.    **Medical Evidence**

The record before this Court documents Smith's visits to various medical specialists from May 2012 to November 2015. The Court only references here the medical evidence related to Smith's mental impairments that are relevant to the issues raised in this case.

In May 2012, an EEG of Smith's brain revealed a seizure focus in the right anterior and mid temporal region and documented a seizure. A follow-up EEG in August 2012, revealed similar results. In October 2012, during a follow-up with her primary care provider, Susan Grace, N.P., ("N.P. Grace"), Smith had an essentially normal physical examination and was reportedly taking Dilantin to control her seizures. Smith returned to N.P. Grace in May 2013 and reported that she was having seizure activity during which she would do things that she did not remember later. N.P. Grace tested Smith's Dilantin levels and found that her levels were below the range at which the medication would be therapeutic. A subsequent Dilantin level test in June 2013 revealed the same results.

3

In July 2013, a friend took Smith to the emergency room after Smith displayed sudden unresponsiveness, staring, and moving her arms around aimlessly. Smith was diagnosed with a mood disorder due to her seizures, with her outbursts most likely corresponding to her seizure episodes.

As part of the application process for disability benefits, Smith underwent a psychological consultative examination conducted by Joyce Scully, Psy.D. in September 2013. Discussing her health with Scully, Smith denied ever being admitted to a psychiatric hospital and ever receiving outpatient mental health treatment. She also denied having hallucinations, delusions, or suicidal or homicidal thoughts. During the mental status examination, Smith remembered two of three recent Presidents, recited six digits forward and three digits backwards, correctly recited the alphabet, and effectively counted backwards from 20 in 15 seconds. Dr. Scully diagnosed Smith with intermittent explosive disorder based upon weekly outbursts, one of which had occurred in Smith's doctor's office. Dr. Scully also assigned Smith a global assessment of functioning ("GAF") score of 60, which is reflective of someone with moderate difficulty in social, occupational, or school functioning.

That same month, N.P. Grace diagnosed Smith with a seizure disorder and advised her to continue taking her medications, eat healthy, and stay active. At the visit, N.P. Grace tested Smith's Dilantin level and found that it was still below the range at which the medication would be effective.

In October 2013, Smith visited her primary care physician, Dr. Nabil Abdo, M.D. ("Dr. Abdo"), who works in the same office as N.P. Grace. Dr. Abdo completed a

4

residual functional capacity ("RFC") determination of Smith and similarly diagnosed her with a seizure disorder. He opined that if Smith was not taking her medications, the symptoms could frequently interfere with attention and concentration required for simple work-related tasks. Dr. Abdo also opined that Smith could not work an eight-hour day, five days a week on a sustained basis. The ALJ granted little evidentiary weight to this opinion and stated that the opinion was not supported by Dr. Abdo's longitudinal treatment history of Smith.

In August 2014, Smith returned to N.P. Grace, who also completed an RFC analysis and determined that Smith could sit for one hour of an eight-hour workday, and stand/walk for one hour of an eight-hour workday. N.P. Grace concluded that Smith was not physically capable of working an eight-hour workday five days a week on a sustained basis. The ALJ granted little evidentiary weight to this opinion, stating that the past treatment records of N.P. Grace do not support this opinion.

In September 2014, Smith visited her neurologist Dr. Nasar Katariwala, M.D. ("Dr. Katariwala") and reported that she was still having seizures. Dr. Katariwala recommended that Smith see a gastrointestinal specialist to determine if she had a malabsorption problem, which might explain her sub-therapeutic levels of Dilantin. In October 2014, after visiting the gastrointestinal specialist, Smith returned to Dr. Katariwala who noted that the gastrointestinal evaluation had not revealed any malabsorption problem despite Smith's ongoing sub-therapeutic levels of Dilantin.

In October 2014, Smith's roommate brought her to the emergency room because she was having a seizure. Smith's Dilantin levels were measured in the emergency

5

room and were still sub-therapeutic. After the emergency room visit, Smith followed-up with Dr. Katariwala who took Smith off Dilantin and prescribed Keppra. In November 2015, when Smith presented for a follow-up visit, Dr. Katariwala noted that Smith had not followed through with increasing her Keppra dose "for unclear reason." [DE 10 at 1464]. Nevertheless, Dr. Katariwala noted that Smith was very firm that she was taking her medications faithfully, even if unexplainably below the full prescribed dosage. [*Id.*]. At that time, Smith complained that she was having two to five seizures a day, with symptoms that included being confused and being unsure where she was.

## C. The ALJ's Determination

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed by the SSA regulations. *See* 20 C.F.R. §§ 404.1520; 416.920.[2] At Step One, the ALJ found Smith has not engaged in substantial gainful activity since her alleged onset date of January 1, 2012. At Step Two, the ALJ found that Smith's seizure disorder, history of an acute right pulmonary embolism, and obesity constituted severe impairments. At Step Three, the ALJ found that none of Smith's impairments or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. At Step Four, the ALJ determined that Smith has the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and that she can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. Parts 404 and 416 respectively. For the sake of economy, this order will only refer to 20 C.F.R. Part 404 even though both parts apply.

6

about six hours; and occasionally climb ramps and stairs. The ALJ's RFC determination also required that Smith avoid moving mechanical parts and unprotected heights.

In making this Step Four determination, the ALJ found that Smith's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found that Smith's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. The ALJ reasoned that Smith's Dilantin levels were repeatedly sub-therapeutic, and when Dr. Katariwala changed the medication to Keppra, Smith did not take the full dosage as prescribed. The ALJ also cites Smith's own testimony that she was independent in her personal care activities and that she could get along with her roommates and enjoyed socializing with them. Lastly, the ALJ cited essentially normal neurological examinations. Based on these findings, the ALJ determined that Smith has the RFC to perform light work with the restrictions outlined above.

Having defined Smith's RFC, the ALJ then concluded that she is capable of performing past relevant work as a Cashier II, which is unskilled work that does not require the performance of work-related activities precluded by the claimant's RFC. Finding that Smith is able to perform that job as actually and generally performed, the ALJ determined that Smith had not been disabled from January 1, 2012.

III. ANALYSIS

    A. **Standard of Review**

On judicial review under the Social Security Act, the Court must accept the Commissioner's factual findings as conclusive if supported by substantial evidence.

7

42 U.S.C. § 405(g). When an ALJ's decision is the final action of the SSA, the reviewing court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Therefore, the court must affirm an ALJ's decision denying benefits if reasonable minds could differ as to whether a claimant is disabled in light of the all the evidence. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

In his decision, the ALJ must build a logical bridge from the evidence to the conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). While a reviewing court must consider the entire administrative record, it must not In addition, a reviewing court is not to substitute its own opinion for that of the ALJ or re-weigh the evidence. *Id.*; *see also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Powers v. Apfel*, 207 F.3d 431, 434–35 (7th Cir. 2000). In the end, however, an ALJ must minimally express his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be certain that the ALJ considered the necessary evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**B.      Issues for Review**

Smith contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ (1) did not include any limitations accounting for the mental

8

effects of her seizures or other evidence indicating mental limitations; (2) improperly discounted the opinions of her treating physicians, Dr. Abdo and N.P. Grace; and (3) improperly discounted her own subjective complaints. An individual's RFC represents her maximum ability to work despite physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record, including evidence related to both severe and non-severe impairments as well as the testimony of friends and family. 20 C.F.R. § 416.945(a)(1); *see also Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

  **1.**  **Mental Limitations**

In challenging the mental limitations included in the ALJ's RFC, Smith argues that the ALJ failed to incorporate limitations accounting for symptoms she experiences in relation to her weekly seizures. For instance, Smith contends that the ALJ's RFC does not address how her explosive outbursts during her seizures, which occur monthly even when somewhat controlled by medication, and her tiredness after her seizures would affect her capacity to work. Similarly, Smith argues that the ALJ did not incorporate limitations resulting from her depression, an admittedly non-severe impairment.

In support, Smith cites to Dr. Scully's reports from her psychological consultative examinations in September 2013 and March 2014. Smith directs the Court's attention to Dr. Scully's notes that Smith reported that her angry outbursts interfered with friendships and occurred more often when she was working or was around people.

9

Further, Smith references Dr. Scully's own concern about Smith's memory because at the March 2014 consultative examination, Smith did not remember seeing Dr. Scully at the September 2013 consultative examination. Indeed, Dr. Scully opined that if Smith were awarded disability benefits, she need help managing them because of these memory issues.

Smith also points to the testimony of her roommate, Ms. Guinn, who stated that Smith experiences seizures a few times daily, engages in strange behavior during them, and does not remember them afterward. Plaintiff's own testimony was also consistent with Ms. Guinn's report.

As the Commissioner indicates, the ALJ's decision does include considerable discussion of the evidence related to Smith's seizure disorder and related symptoms. In the Step Two severity analysis, the ALJ mentions Smith's seizure disorder diagnoses, reports Smith's own testimony regarding her seizure-related symptoms, and references assorted medical evidence about her seizure including test results showing sub-therapeutic levels of her seizure medication. In the RFC analysis section of the decision, the ALJ recites even more evidence related to Smith's seizures including the opinions of her medical providers, Dr. Abdo and N.P. Grace. The ALJ also cited notations from doctors' visits that Smith's neurological exams were essentially normal. Therefore, the ALJ clearly knew about and considered Smith's seizure disorder and its effects on her activities of daily living, her social functioning, her concentration, persistence, and pace, as well as her RFC.

10

With that said, the ALJ's recitation and summary offer no rationale for how the outbursts, tiredness, and memory issues were accounted for in the RFC. The ALJ appears to rely on reports of normal neurological exams and an inference of intentional noncompliance to support his conclusions about Smith's RFC, but does not explain how that fact and inference negate the other evidence regarding the impact of the regularity of her seizures, and her angry outbursts, tiredness, and memory problems on her ability to work. Without more of an explanation, the ALJ has not created the necessary logical bridge between the evidence he clearly considered and the RFC that lacks any obvious accommodation of Smith's mental limitations arising from her seizures. *See Haynes*, 416 F.3d at 626. Without reweighing the evidence or reaching any conclusion about whether the ALJ's RFC is correct, the Court finds remand appropriate to address the missing logical bridge. *See id.*; *see also Powers*, 207 F.3d at 434–35.

### 2. Weight of the Medical Opinions

On appeal, Smith also argues that the ALJ improperly discounted the medical opinions of treating physician Dr. Abdo and N.P. Grace. Under the treating physician rule, an ALJ should give controlling weight to a treating source as long as it is supported by medical findings and consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).[3] Generally, greater weight is given to the opinions of a treating source because that

---

[3] "The treating-physician rule has been modified to eliminate the 'controlling weight' instruction for" claims filed on or after March 27, 2017. *Kaminski v. Berryhill*, 894 F.3d 870, 874 n.1 (7th Cir. 2018). However, the old rule still applies to Smith's claim because it was filed before March 27, 2017. *Id.* (citing 20 C.F.R. §§ 404.1527, 404.1420c).

11

source is more familiar with the claimant's conditions and circumstances. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

If an ALJ does not give a treating source's opinion controlling weight, the ALJ must consider several factors while determining what weight to give it, and must give good reasons to explain why he gave it that weight. 20 C.F.R. § 404.1527(c). Specifically, an ALJ choosing to discount a treating source's opinion "must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Similarly, ALJs must consider evidence from all sources, including "other sources" such as nurse practitioners. 20 C.F.R. § 404.1513(d); SSR 06-03p. Moreover, the same factors to be considered when discounting the opinions of treating sources under 20 C.F.R. § 404.1527 must be applied when assessing the opinions of "other sources." SSR 06-03p.

Here, the ALJ granted little evidentiary weight to the opinions of both Dr. Abdo and N.P. Grace, reasoning that their opinions were not supported by their treatment histories of Smith. Specifically, the ALJ discounted Dr. Abdo's RFC opinion from October 2013 because "[it] was not supported by Dr. Abdo's longitudinal treatment history." [DE 10 at 31]. Yet the ALJ did not apply the Section 1527(c) factors to determine the weight to be given to Dr. Abdo's opinion.

In so doing, the ALJ has once again failed to create the necessary logical bridge to support discounting Dr. Abdo's opinion. The ALJ tries to explain the weight given to Dr. Abdo's opinion by noting generally its inconsistency with Dr. Abdo's own records

12

on Smith. However, the ALJ does not identify specific inconsistencies leaving Smith and this Court unclear as to how the opinion is inconsistent. Or put another way, the ALJ has not cited to evidence that supports with sufficient clarity his decision to discount Dr. Abdo's opinion about Smith's RFC.

The ALJ's decision to discount the opinion of N.P. Grace is similarly flawed. In explaining his assessment of N.P. Grace's opinion on Smith's RFC, the ALJ conclusorily stated that her opinion was "not supported by the treatment records of Ms. Grace." [DE 10 at 32]. Without the necessary articulation of a rationale for discounting the opinions of these two medical providers who treated Smith and her seizure disorder over time, the ALJ's RFC determination is not supported by substantial evidence and must be remanded.

### iii. Subjective Complaints

Finally, Smith contends that the ALJ's credibility determination is not supported by substantial evidence. An ALJ must determine the extent to which a claimant's subjective symptoms are credible if he determines there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms. SSR 96-7p; *see also* 20 C.F.R. § 404.1529(c)(3).[4] While a claimant can establish the severity of his symptoms by his own testimony, an ALJ need not accept the claimant's subjective complaints to the extent they clash with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). A

---

[4] SSR 96-7p was rescinded and superseded by SSR 16-3p in March 2016, about two months after the ALJ issued the decision under review in this case. Therefore, the standards in SSR 96-7p will be applied in considering Smith's arguments about the ALJ's credibility determination.

13

court defers to the ALJ's assessment of the claimant's truthfulness and therefore will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Here, the ALJ's credibility determination appears to be based on his inference that Smith was noncompliant—presumably intentionally so—in taking her seizure medication. Yet the ALJ only cites to evidence in the record that Smith's Dilantin levels were repeatedly sub-therapeutic, that on one occasion Smith inexplicably failed to increase her dosage of the medication as prescribed, and Dr. Abdo's and Dr. Katariwala's statements that her symptoms could return without medication. This litany of evidence is not disputed, but does not on its own support a conclusion that Smith's symptoms would have been under control but for an unwillingness to take her medications as directed. Moreover, the ALJ's inference of noncompliance does not account for the testimony of Smith's roommate about helping with her medication regimen and Smith's own insistence that she was taking her medications faithfully.

Therefore, the support the ALJ provides for his credibility determination is purely speculative and does not account for parts of the record he references in his own decision. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record"). Accordingly, the ALJ's credibility determination is patently wrong as written. *See id.* The Court reaches no conclusion on whether the claimant's subjective symptoms should

14

have been discounted. Instead, the Court finds remand necessary to rectify the lack of substantial evidence connecting the record to the ALJ's credibility determination.

### III. CONCLUSION

Having failed to (1) account for evidence of mental limitations arising from Smith's seizures, (2) articulate reasons for discounting the opinions of Smith's medical providers, Dr. Abdo and N.P. Grace, and (3) explain why Smith's credibility was discounted, the ALJ's opinion is not supported by substantial evidence. Therefore, this Court **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of Smith.

**SO ORDERED.**

Dated this 13th day of September 2018.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge